1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11    J.H. ROSE LOGISTICS, LLC,                       CASE NO. 19-5073 RJB

12                              Plaintiff,            ORDER ON DEFENDANT'S
            v.                                        MOTION FOR SUMMARY
                                                      JUDGMENT
13    DOMETIC CORPORATION,

14                              Defendant.

15

16          This matter comes before the Court on Defendant Dometic Corporation's ("Dometic")

17    Motion for Summary Judgment.  Dkt. 30.  The Court has considered the pleadings filed in

18    support of and in opposition to the motion and the file herein.

19          Originally filed on January 22, 2019, this case was removed from Pierce County,

20    Washington Superior Court on January 25, 2019.  Dkt. 1-1.  Dometic now moves for summary

21    judgment, arguing that Plaintiff J.H. Rose, Logistics, LLC ("Rose") has failed to point to

22    evidence in dispute that they had a contract, that non-party Elite International Cargo, LLC

23    ("Elite") was Dometic's agent, or that Dometic was unjustly enriched at Rose's expense.  Dkt.

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1    30.  Plaintiff Rose opposes the motion.  Dkt. 32.  For the reasons provided herein, the motion

2    (Dkt. 30) should be granted.

3                    I.        **FACTS AND PROCEDURAL HISTORY**

4        **A.  FACTS**

5        Defendant Dometic is a manufacturer of durable goods overseas.  Dkt. 31.  Dometic imports

6    these goods, which are delivered via ocean freighters to the United States.  *Id.*  Dometic

7    contacted non-party Elite for a quote to arrange for ocean and overland freight shipments of its

8    goods.  Dkt. 31.  Dometic accepted the quote, as is evidenced by Elite and Dometic's written

9    documents:  Elite's reference numbers for at least 46 orders, House Bills of Lading for each

10   shipment, associated fees, and Dometic's payment in full of Elite's invoices.  Dkts. 31-2 and 31-

11   3.  As is relevant here, on over 40 occasions, Elite provided shipping brokerage services to

12   Dometic that also involved the Plaintiff Rose.  Dkt. 31-2.

13       On September 12, 2017, Elite contacted Plaintiff Rose to inquire whether Rose was

14   interested in providing drayage services (short overland transport of goods) from the Port of

15   Seattle to Dometic's Sumner, Washington facility.  Dkt. 36, at 2.  Rose's agents/employees,

16   Colette Wiest and Jennifer Spaulding, further communicated with Elite to explore the terms of

17   the proposed engagement.  Dkt. 36, at 2.  According to Rose's Wiest, Wiest met with

18   representatives of Elite and representatives of Dometic and discussed the proposed terms.  Dkts.

19   35, at 3.  Both Wiest and Spaulding state that they "understood that J.H. Rose was contracting to

20   provide shipping and freight logistics services to Dometic and that Elite was acting as Dometic's

21   agent."  Dkts. 35, at 2 and 36, at 3.

22

23

24

1    On September 20, 2017, Rose as a "registered property broker" contracted with non-party

2  Edgmon Trucking LLC ("Edgmon"), as a "registered motor carrier," to transfer the goods.  Dkt.

3  35-2.  Rose paid Edgmon, the shipper, the full amount of Edgmon's invoices. Dkt. 35, at 4.

4    According to Rose, after several emails and conversations, on September 28, 2017, Elite sent

5  Rose and Dometic a document entitled "Dometic/EIC [Elite International Cargo]/JH Rose

6  Drayage SOP [Standard Operating Procedure]" ("SOP").  Dkt. 36-2.  The SOP discusses how the

7  work will be done and provides, in part:

8         1. Email Dometic on what loads are coming in and what empties you plan to
           pull.  At the end of any given day there should be no empties in the yard for the
9         next day. . . .
           2. [Elite] will provide a daily activity report minimally twice per week.  DO's
10        will be issued for each booking indicating release, cargo location . . .
           3. Upon arrival to Dometic Sumner DC, JH Rose will be given either
11        instructions to drop in lot or a dock door . . .
           4. JH Rose to provide [Elite] a weekly delivery update on [Elite's] daily
12        activity report . . .

13 Dkt. 36-2, at 2-3.  The SOP's section entitled "Invoices" provides, in part, "[a]ll invoices please

14 send electronically.  All invoices will be paid by wire to: JH Rose . . . All invoices should be sent

15 day after load drops. . ." Dkt. 36-2, at 4.  The SOP also includes Rose's rate sheet:  e.g. $400

16 plus fuel from the Port of Seattle to Sumner; and $365 plus fuel from the Port of Tacoma to

17 Sumner.  *Id.*  The SOP does not have any signatures.

18    According to Plaintiff Rose, this SOP was emailed by Elite to both Rose and Dometic.

19 Dkt. 36.  It points to a September 28, 2017 email in which an alleged Elite employee asked

20 Dometic's Ferris Jones "to review the SOP and confirm if acceptable."  Dkt. 35-1, at 3.

21 Dometic's Jones responded by email with: "[e]verything looks good to me except I would

22 change our hours for delivery to . . . Also I'm not sure if Chuck [last name not clearly identified

23 in the record] has anything he may want to add to the attached document."  Dkt. 35-1, at 2.

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1    According to Rose's Spaulding, the SOP contained the material terms of the agreement

2  between Plaintiff Rose, non-party Elite, and Defendant Dometic.  Dkt. 35, at 3.  Rose asserts that

3  Edgmon performed freight hauling services in conformance with the SOP.  Dkt. 35, at 4.  Rose's

4  Spaulding also maintains, that in accord with the SOP, Rose sent its' invoices to Elite, Elite

5  billed Dometic; Dometic paid Elite, and Elite then paid Rose.  Dkt. 35, at 4.  (Rose paid Edgmon

6  separately).  Dkt. 35, at 4.

7    Spaulding and Wiest, of Rose, assert that: "in the course of the business relationship between

8  Dometic, Elite and [Rose], various issues arose with the pick-up and delivery. . . When these

9  issues arose, Dometic communicated directly with Elite and [Rose] to address the issues . . ."

10  Dkts. 35, at 4; 36, at 3.  They maintain that Dometic directed Elite and [Rose] on "how they

11  wanted the specific freight loads to be delivered and how and when the empty containers needed

12  to removed from their yard." *Id.* They also assert that when billing issues arose, she worked with

13  Dometic and Elite and Dometic "directed both J.H. Rose and Elite as to how it wanted these

14  issues addressed." *Id.*

15    Rose asserts that of the over 40 shipments, Elite did not pay it for its brokerage services on

16  13 occasions for a total of $154,578.00.  Dkts. 18-1; 34, at 2; 35, at 5.  Rose demanded Dometic

17  pay the balance; Dometic refused, asserting that Dometic paid Elite.  Dkt. 35, at 5.

18    On May 21, 2018, Rose filed suit against Elite and Dometic in California state court.  *J.H.*

19  *Rose Logistics, LLC v. Elite International Cargo, LLC and Dometic Corporation,* Los Angeles

20  County, California Superior Court Case number NCO61802 (complaint filed in the record here at

21  Dkt. 31-7).  After Dometic moved to be dismissed for lack of personal jurisdiction, Rose

22  voluntarily dismissed its claims against it without prejudice. *Id.* (filed in the record here at Dkt.

23

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1   33-3).  Rose received a default judgment against Elite for $164,231.05.  *Id.* (order filed in the

2   record here at Dkt. 31-8).

3      Rose contends that it is unable to make a claim on Elite's bond because it was never provided

4   the necessary paperwork.  Dkt. 34, at 2.  Rose asserts that Elite is now insolvent.  Dkt. 32.

5      In this case against Dometic, Rose seeks to recover $154,578.00 in freight charges, plus

6   interest, costs, attorneys' fees and for such "additional relief as determined appropriate by the

7   Court" for its claims for breach of contract (against Dometic as a party to the contract or as

8   Elite's principal on an agency theory) and for unjust enrichment.  Dkt. 18.

9      **B.  PENDING MOTION**

10      Dometic now moves for summary dismissal of the case arguing that Rose has no

11   contractual right of payment against it, Rose has no right to collect payment against Dometic on

12   an agency theory, and Dometic is not liable under a theory of unjust enrichment.  Dkt. 30.

13      Rose opposes the motion.  Dkt. 32.  It notes that discovery has been limited in this case.

14   *Id.* It states that they parties were discussing scheduling depositions, but then travel became

15   limited due to the Covid-19 pandemic.  *Id.*  (The undersigned notes that the discovery deadline

16   passed several months ago and the parties here do not ask for an extension of the discovery

17   deadline). As to the merits of the motion, Rose alleges that it did have a contract with Dometic

18   and Elite – the SOP or one implied by the parties' course of conduct.  *Id.*  Rose maintains that

19   Elite was Dometic's agent, and so as principal, Dometic is liable for Elite's breach of the

20   contract.  *Id.*  It asserts that its claims for unjust enrichment and quantum meruit should not be

21   dismissed because there are issues of fact as to those claims.  *Id.*

22      Dometic replies and argues that Dometic and Rose did not have a contract, and even if

23   they did, there are no grounds in the contract that require Dometic pay Rose if Elite failed to pay

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1    Rose.  Dkt. 37.  Dometic maintains that Elite was not its agent.  *Id.* Dometic contends that Rose

2    has failed to demonstrate that there are issues of fact on its claim for unjust enrichment.  *Id.*  It

3    asserts that Rose raises, for the first time in its response to the motion for summary judgment, a

4    claim for quantum meruit – Dometic asserts that because Rose's implied-contract theory fails, its

5    claims for quantum meruit also fails.  *Id.*

6                            **II.      DISCUSSION**

7         **A.  APPLICABLE LAW FOR DIVERSITY CASE**

8         Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in

9    diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law.

10   *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  In applying Washington

11   law, the Court must apply the law as it believes the Washington Supreme Court would apply it.

12   *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

13   "'[W]here there is no convincing evidence that the state supreme court would decide differently,

14   a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'"

15   *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v.*

16   *Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)).

17        **B.  SUMMARY JUDGMENT STANDARD**

18        Summary judgment is proper only if the pleadings, the discovery and disclosure materials

19   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

20   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c). The moving party is

21   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

22   showing on an essential element of a claim in the case on which the nonmoving party has the

23   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

1    of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

2    for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

3    (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

4    metaphysical doubt.").  *See also* Fed. R. Civ. P. 56 (d).  Conversely, a genuine dispute over a

5    material fact exists if there is sufficient evidence supporting the claimed factual dispute,

6    requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

7    *Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

8    *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

9          The determination of the existence of a material fact is often a close question.  The court

10   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

11   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

12   *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

13   of the nonmoving party only when the facts specifically attested by that party contradict facts

14   specifically attested by the moving party.  The nonmoving party may not merely state that it will

15   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

16   to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

17   Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not

18   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

19          **C.  BREACH OF CONTRACT**

20          To assert a claim for breach of contract, a plaintiff must allege the existence of a valid

21   contract, a breach of the contract, and damages.  *See Meyers v. State*, 152 Wash. App. 823, 827,

22   828 (2009).

23                    1.   Existence of Actual Contract – or Implied Contract

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1    Plaintiff Rose and Defendant Dometic dispute whether they had a valid contract.  The

2  SOP is best described as an agreement on the processes and procedures - the parties' agreed

3  course of dealing - to get the goods moved.  Dometic points out that it did not sign the SOP.  The

4  lack of signatures on the SOP itself is not dispositive of whether Dometic and Rose had a

5  contract.

6    The September 28, 2017 email from Dometic's Jones to Elite was not an acceptance of

7  the SOP.  In response to a request from Elite to confirm that the SOP was acceptable, Dometic's

8  Ferris Jones responded by email with: "[e]verything looks good to me except I would change our

9  hours for delivery to . . . Also I'm not sure if Chuck [last name not clearly identified in the

10  record] has anything he may want to add to the attached document."  Dkt. 35-1, at 2.  That is not

11  a "yes," it is a "probably" at best.

12    "A contract may be oral as well as written, and a contract may be implied in fact with its

13  existence depending on some act or conduct of the party sought to be charged."  *Weiss v.*

14  *Lonnquist*, 153 Wn. App. 502, 511 (2009).  "Washington follows the objective manifestation test

15  for contracts.  Contract formation requires an objective manifestation of mutual assent of both

16  parties."  *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 207 (2012)(*internal quotation marks and*

17  *citations omitted*).  "Generally, manifestations of mutual assent will be expressed by an offer and

18  acceptance."  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 (2004).  "The

19  terms assented to must be sufficiently definite."  *P.E. Sys,* at 207.  "A finder of fact may deduce

20  mutual assent to an agreement from the circumstances surrounding a transaction, inferring the

21  existence of a contract based on a course of dealings between the parties or a common

22  understanding within a particular commercial setting."  *Weiss,* at 511.

23

24

1   Rose has failed to point to facts supporting the conclusion that Dometic and Rose had an

2   implied contract based on their conduct.  Dometic placed orders with Elite and paid Elite when

3   invoiced.  Rose has failed to provide evidence that Rose and Dometic had "a common

4   understanding within [their] particular commercial setting." *Id.*  The most that the evidence

5   shown by the parties' conduct is that they agreed on a course of dealing only.  Any agreement

6   did not go beyond that, and the evidence does not show any agreement by Dometic to pay Rose.

7   Rose's claim for breach of implied contract should be dismissed.

8   Moreover, the parties do not address Washington's statute of frauds in their pleadings.

9   Under RCW 19.36.010 provides, in part,

10          Any agreement, contract, and promise shall be void, unless such agreement,
            contract, or promise, or some note or memorandum thereof, be in writing, and
11          signed by the party to be charged therewith, or by some person thereunto by him
            or her lawfully authorized, that is to say: (1) Every agreement that by its terms is
12          not to be performed in one year from the making thereof; (2) every special
            promise to answer for the debt, default, or misdoings of another person . . .
13

14   To the extent that Rose seeks to enforce an agreement by Dometic to "answer for the debt" of

15   Elite, the agreement must be in writing and signed by Dometic.  While "[i]In certain

16   circumstances, the doctrine of part performance saves a contract that does not otherwise satisfy

17   the statute of frauds, *Shelcon Const. Grp., LLC v. Haymond*, 187 Wn. App. 878, 895 (2015),

18   those circumstances are not present here.  "Unwritten or unsigned agreements are saved under

19   the doctrine of part performance when (1) the contract is proven by clear, cogent, and convincing

20   evidence and (2) the acts constituting part performance unmistakably point to the existence of the

21   claimed agreement." *Shelcon Const. Grp*., at 895.  Rose fails to make a showing on either of

22   these prongs.

23   In addition to the issue of whether any contract exists, Dometic challenges the precise

24   terms of the contract.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1      2.  Breach

2      Dometic argues that even if the Dometic was a party to the Rose/Elite SOP agreement or

3  there is an implied contract based on the parties' interactions, the terms didn't require Dometic to

4  pay Rose's invoices if Elite failed to do so. Dometic argues that the extrinsic evidence

5  surrounding the creation of the SOP should be excluded.  Under Washington law, "surrounding

6  circumstances and other extrinsic evidence are to be used to determine the meaning of specific

7  words and terms used" in a written document "and not to show an intention independent of the

8  instrument or to vary, contradict or modify the written word."  *Hearst Commc'ns, Inc. v. Seattle*

9  *Times Co.*, 154 Wn.2d 493, 503 (2005). The SOP does not identify who pays Rose.  It is

10  ambiguous as to who should pay Rose.  Accordingly, extrinsic evidence should be considered.

11      There is no evidence in the record of a manifestation of mutual assent for Dometic to be

12  bound to pay Rose directly if Elite did not pay Rose.  There is no evidence that it was the parties'

13  course of conduct for Dometic to pay Rose; it is undisputed that Rose billed Elite, Elite billed

14  Dometic, Dometic paid Elite, and Elite then paid Rose.  When Rose demanded Dometic pay it

15  after Elite failed to pay, Dometic refused.  While "mutual assent is generally a question of fact,"

16  *P.E. Sys,* at 207, there is no evidence to support Rose's assertion that Dometic agreed to pay it if

17  Elite did not.  Accordingly, to the extent that Rose makes a contract claim based on the

18  allegation that Dometic directly breached a contract, the claim should be dismissed.

19  **D.  BREACH OF CONTRACT LIABILITY ON A THEORY OF AGENCY**

20      Rose also claims that Dometic, as principal, is liable for Elite's breach of contract on a

21  theory of agency.  Dkt. 32.

22      "[A]n agency relationship results from the manifestation of consent by one person that

23  another shall act on his behalf and subject to his control, with a correlative manifestation of

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1    consent by the other party to act on his behalf and subject to his control." *Afoa v. Port of Seattle*,

2    191 Wn.2d 110, 126 (2018).  Likewise, in the Ninth Circuit Pattern Jury Instruction 4.4, "agent"

3    is defined as: "a person who performs services for another person under an express or implied

4    agreement and who is subject to the other's control or right to control the manner and means of

5    performing the services.  "An agency relationship does not depend on an express understanding,

6    but may arise out of the conduct of the parties. It does not exist unless the facts, either expressly

7    or by inference, establish that one person is acting at the instance of and in some material degree

8    under the direction and control of the other." *Stansfield v. Douglas Cty.*, 107 Wn. App. 1, 17–18

9    (2001).  Rose, as the party asserting that there was an agency relationship between Defendant

10   Dometic and non-party Elite, has the burden to demonstrate it.  *Id.*

11        As evidence that Elite was acting as Dometic agent, Rose points to an email exchange

12   between a Kathy Spencer (purportedly of Elite) to Dometic's Linda Stickel, which says, in part,

13   "Again, I've committed to carrier on Dometic's behalf based on what I was told Dometic needed

14   for space.  Don't know what I'm going to do if this doesn't get fixed." Dkt. 35-3, at 3.  Rose

15   points out that its' employees perceived Elite as Dometic's agent.  This evidence is insufficient

16   to establish that Elite was Dometic's agent.

17        Rose also argues that Dometic had an agency relationship with Elite based on Dometic's

18   conduct during the course of the parties' interactions.  In Washington, "[c]ontrol is not

19   established if the asserted principal retains the right to supervise the asserted agent merely to

20   determine if the agent performs in conformity with the contract. Instead, control establishes

21   agency only if the principal controls the manner of performance." *Stansfield v. Douglas Cty.*,

22   107 Wn. App. 1, 18 (2001)(*internal quotation marks and citations omitted*).  Rose points to

23   Spauling and Wiest's assertions that: "in the course of the business relationship between

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1   Dometic, Elite and [Rose], various issues arose with the pick-up and delivery. . . When these

2   issues arose, Dometic communicated directly with Elite and [Rose] to address the issues . . ."

3   Dkts. 35, at 4; 36, at 3.  They maintain that Dometic directed Elite and [Rose] on "how they

4   wanted the specific freight loads to be delivered and how and when the empty containers needed

5   to removed from their yard." *Id.* They also assert that when billing issues arose, they worked

6   with Dometic and Elite, and Dometic "directed both J.H. Rose and Elite as to how it wanted

7   these issues addressed." *Id.*

8       This evidence is insufficient to show an agency relationship.  There is no clear evidence

9   that Dometic was controlling the parties' manner of performance.  There is no evidence that

10  Rose and Elite agreed to be bound by Dometic's suggestions.  Dometic's suggestions were only

11  Dometic's efforts to determine whether the parties were performing in conformity with the

12  contract. *Stansfield,* at 18.  Even construing the facts in Rose's favor, Rose's proffered evidence

13  regarding Dometic's conduct does not create issues of fact as to whether Elite was Dometic's

14  agent.  The motion for summary judgment to dismiss the contract claim on the grounds of

15  agency should be granted.

16          **E.  UNJUST ENRICHMENT AND QUANTUM MERUIT CLAIMS**

17      In their response, Rose states that it is making a claim for both unjust enrichment and a

18  quantum meruit.  Dkt. 32.

19              1.  Unjust Enrichment

20      "Unjust enrichment is the method of recovery for the value of the benefit retained absent

21  any contractual relationship because notions of fairness and justice require it.  In such situations

22  a quasi-contract is said to exist between the parties." *Young v. Young*, 164 Wn.2d 477, 484, 191

23  P.3d 1258, 1262 (2008)  Washington law requires three elements be established:  (1) "a benefit

24

1   conferred upon the defendant by the plaintiff;" (2) "an appreciation or knowledge by the

2   defendant of the benefit;" and (3) "the acceptance or retention by the defendant of the benefit

3   under such circumstances as to make it inequitable for the defendant to retain the benefit without

4   the payment of its value." *Id.*

5        Rose's claim for unjust enrichment should be dismissed.  Rose failed to point to issues of

6   fact that Rose conferred a benefit on Dometic.  It is undisputed that Dometic paid Elite in accord

7   with the parties' course of dealing.  While Rose paid the shipper, Rose makes no showing that

8   Dometic was unjustly enriched at Rose's expense.  This is really a question of who should bear

9   the loss caused by Elite's default.  Rose holds a substantial judgment against Elite for that

10  default.  There is no showing here that it is inequitable if that burden falls only on Rose.

11                2.   Quantum Meruit

12       "Quantum meruit . . . is the method of recovering the reasonable value of services

13  provided under a contract implied in fact." *Young,* at 1262.  "The elements of a contract implied

14  in fact are: (1) the defendant requests work, (2) the plaintiff expects payment for the work, and

15  (3) the defendant knows or should know the plaintiff expects payment for the work." *Id.*, at

16  1263.

17       As stated above, Rose has failed to point to facts in dispute that Rose had a contract in

18  fact with Dometic.  Its claim for relief under a theory of quantum meruit should be dismissed.

19  The record indicates that Dometic requested work of Elite, not Rose.  Rose has not carried its

20  burden on this claim.

21

22

23

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1

## III.   ORDER

2   Therefore, it is hereby **ORDERED** that:

3   • Defendant Dometic Corporation's Motion for Summary Judgment (Dkt. 30) **IS**

4   **GRANTED;** and

5   • This case **IS DISMISSED**.

6   The Clerk is directed to send uncertified copies of this Order to all counsel of record and

7   to any party appearing *pro se* at said party's last known address.

8   Dated this 2nd day of June, 2020.

9

10   _____
    ROBERT J. BRYAN
11   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14